Shawn VAN ASDALE, an individual, and Lena Van Asdale, an individual, Plaintiffs,

v.

INTERNATIONAL GAME, TECHNOLOGY, a Nevada corporation, Defendant.

No. 3:04–CV–00703–RAM.

United States District Court, D. Nevada.

June 13, 2007.

Opinion Denying Reconsideration Aug. 10, 2007.

Margo Piscevich, Piscevich & Fenner, Reno, NV, for Plaintiffs.

Gordon Krischer, Mark W. Robertson, O'Melveny & Myers, LLP, Los Angeles, CA, Nathaniel L. Dilger, O'Melveny & Myers LLP, Newport Beach, CA, Lance P. Maiss, Senn Meulemans, LLP, Richard G. Campbell, Jr., Armstrong Teasdale, LLP, Reno, NV, Stephen C. Hackney, Kirkland & Ellis LLP, Chicago, IL, for Defendant.

## *MEMORANDUM DECISION AND ORDER*

MCQUAID, United States Magistrate Judge.

Before the court is Defendant's Motion for Summary Judgment (Doc. # 173). Plaintiff opposed the motion (Doc. # 177) and Defendant replied (Doc. # 183).

## *BACKGROUND*

Plaintiffs Shawn and Lena Van Asdale, who are husband and wife, are former corporate counsel for Defendant, International Game Technology ("IGT"). (Doc. # 173). Plaintiffs sue Defendant for their dismissals, which they allege were done in retaliation for Plaintiffs' protected activity of reporting suspected IGT shareholder fraud to federal authorities. (Doc. # 3). Plaintiffs' suit alleges that Defendants are liable to them under the Sarbanes–Oxley Act (SOX) and for the Nevada state torts of tortious discharge, intentional interference with contractual relations, and intentional infliction of emotional distress. (*Id.*). Plaintiff Lena Van Asdale also alleges that Defendant is liable to her for retaliation. (*Id.*).

Defendant is a Nevada corporation with its principal place of business in Reno, Nevada. (*Id.*). Defendant specializes in the design, development, manufacturing, distribution and sales of computerized gaming machines and systems products. (Doc. # 173 at 2). Defendant hired both Plaintiffs in January of 2001 to work as in-house intellectual property attorneys. (*Id.*). Both Plaintiffs are attorneys licensed in Illinois. (Doc. # 173, Exh. 2 at 13–14). Neither is licensed in any other jurisdiction, including Nevada. (*Id.*). The alleged events giving rise to this case took place in Nevada. (Doc. # 3).

The court derives jurisdiction in this case from the federal question at issue under the Sarbanes Oxley statute. (Doc. # 3).

Plaintiffs allege in their complaint that top management at Anchor gaming stood to make millions of dollars, personally, if IGT acquired Anchor by merger. (Doc. # 3). Further, they allege that the merger was "based primarily on Anchor's 'Wheel of Gold' patents" (the "Wheel patents"). (*Id.*). Plaintiffs alleged that Anchor withheld vital information about the Wheel patents from IGT and from IGT's Intellectual Property department. (*Id.*).

Specifically, Plaintiffs allege that Anchor withheld information about the "Australian Flyer", a document that would have apparently showed the wheel patents to be worthless. (*Id.*). Plaintiffs allege that when this Australian Flyer was eventually revealed by Anchor's former patent counsel, IGT terminated its litigation against Bally since the flyer revealed the invalidity of the patent that IGT was then litigating (the 000 patent). (*Id.*). Plaintiffs allege that they both met with Dave Johnson, General Counsel for IGT, to express their views on the invalidity of the 000 patent and to express concern that fraud had occurred. (*Id.*). Plaintiff Shawn Van Asdale alleges that he also engaged in other protected whistleblowing activity when he discussed this same issue with Sarh Beth Brown, the former General Counsel for IGT, and Richard Pennington, another IGT executive. (*Id.*). Both Plaintiffs were subsequently terminated, allegedly in retaliation for their whistleblowing activities. (*Id.*).

## *DISCUSSION*

### A. Standard for Summary Judgment

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir.1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where reasonable minds

could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), cert. denied, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and

the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

## B. Effect of Plaintiffs' Illinois licenses on their claims

■ Defendant argues that the professional ethics rules of Illinois bar Plaintiffs' claims. (Doc. # 173). The court disagrees. With regard to what ethical rules apply, Defendant argues that only the Illinois rules apply, and that as such Illinois law precludes Plaintiffs from pursuing their claim. (Doc. # 173 at 10).

First, while Plaintiffs are certainly bound by the Illinois rules, since they are licensed in Illinois, they are also bound by the Nevada ethics rules, since they served as in-house counsel in Nevada. Under Nevada Rule of Professional Conduct 5.5A a "lawyer who is not admitted in [Nevada], but who is admitted and in good standing in another jurisdiction of the United States, and who provides legal services for a Nevada client in connection with transactional or extra-judicial matters that are pending in or substantially related to Nevada" . . . "shall be subject to the jurisdiction of the courts and disciplinary boards of this state with respect to the law of this state governing the conduct of lawyers to the same extent as a member of the State Bar of Nevada. He or she shall familiarize himself or herself and comply with the standards of professional conduct required of members of the State Bar of Nevada and shall be subject to the disciplinary jurisdiction of the State Bar of Nevada." NEV. R. PROF'L CONDUCT 5.5A(a)(1) and (e)(formerly Supreme Court Rule 189.1). This rule clearly applies to in-house counsel who are employed in Nevada, even though only admitted to practice else-

where. Although the Illinois Rules declare that "[I]f the lawyer is licensed to practice only in this jurisdiction, the rules to be applied shall be the rules of this jurisdiction[,]", ILL. R. PROF'L CONDUCT 8.5., Illinois cannot abrogate the power of Nevada to regulate the conduct of Illinois licensed attorneys who practice as in-house counsel in Nevada.

■ Second, even if only the Illinois rules applied, Plaintiffs claims would not be foreclosed. Defendants mistakenly conclude that because Plaintiffs are bound by the Illinois Rules of Professional Conduct, Illinois law governs whether in-house counsel may pursue a suit for retaliatory discharge. (Doc. # 173). Defendants place great emphasis on the Illinois state case of *Balla v. Gambro,* 145 Ill.2d 492, 164 Ill.Dec. 892, 584 N.E.2d 104 (1991). In *Balla,* the defendant allegedly discharged the plaintiff, an Illinois attorney and in-house counsel for defendant, after plaintiff informed defendant's president that plaintiff would do whatever was necessary to stop the sale of defective dialyzers. *Id.* at 496, 164 Ill.Dec. 892, 584 N.E.2d 104. The court found that the plaintiff could not maintain his suit for the Illinois state tort of retaliatory discharge because the ethical mandates of the Illinois Rules of Professional Conduct required that he make the disclosure, since "use of the dialyzers would cause death or serious bodily injury. Thus, . . . [plaintiff attorney] was under the mandate of this court to report the sale of these dialyzers." *Id.* at 502, 164 Ill.Dec. 892, 584 N.E.2d 104. The *Balla* court further explained that because the ethical rules *required* plaintiff to report the defective dialyzers, plaintiff had no choice in the matter of whether to follow the ethical rules or whether to follow the unethical demand of his client; he must follow the ethical rules and "it would be inappropriate for the employer/client to bear the

economic costs and burdens of their in-house counsel's adhering to their ethical obligations under the Rules of Professional Conduct."

We decline to hold that the tortured logic of *Balla* prevents Plaintiffs' going forward with their claims. The *Balla* case and the instant case have some important differences. Significantly, the *Balla* decision applies Illinois state law regarding the tort of retaliatory discharge in a state court. Here, Plaintiffs claim that they were discharged in violation of the Sarbanes–Oxley act (SOX), a federal law, and in violation of certain Nevada state torts. Further, they bring their claims in federal court, not Illinois state court. In the court's view, *Balla* and its progeny govern whether an attorney plaintiff may maintain a suit for retaliatory discharge under Illinois law. It does not govern whether an attorney plaintiff may maintain a whistle-blower suit under federal law nor whether an attorney plaintiff may maintain a suit for tortious discharge—or any other tort—under Nevada state law. Further, it is notable that the *Balla* court distinguished its holding from the holding in *Parker v. M & T Chemicals, Inc.*, 236 N.J.Super. 451, 566 A.2d 215 (1989), where a whistle-blower statute *was* at issue. Here, Plaintiffs claim they engaged in protected whistleblower conduct under SOX and that they were discharged in retaliation for that conduct, in contravention of both federal and Nevada state law. The fact that they are licensed in Illinois should not and does not bar their claims.

## C. Attorney use of attorney-client privileged information in prosecution of action for wrongful termination against former client/employer

We next consider which jurisdiction's case law properly governs the matter of attorney-client privilege in this case. Plaintiffs bring this suit in federal court, and this court has jurisdiction because of the federal question at issue. However, Plaintiffs claims are made under both Federal law and Nevada state law.

 Plaintiffs are incorrect that federal common law governs the privilege issues for their entire case. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Rather, Nevada law governs issues of privilege for the state law claims, because Nevada law provides the rules of decisions for those claims. *See Harlan v. Lewis*, 982 F.2d 1255, 1258 (8th Cir.1993)(applicability of physician-patient privilege in civil cases determined under state law when issue to be decided is determined under state law). Federal common law governs issues of privilege for the federal (SOX) claims only. *See Religious Technology Ctr. v. Wollersheim*, 971 F.2d 364, 367 n. 10 (9th Cir.1992)(federal common law of privileges governs in federal question cases); *accord Willy v. Administrative Review Bd.*, 423 F.3d 483, 495 (5th Cir.2005)(addressing privilege question in context of suit by former in-house counsel). Where a particular item of evidence is applicable to both Plaintiffs' federal and state claims, the federal privilege law will be applied to the exclusion of the state law. *See Religious Technology Ctr.*, 971 F.2d at 367 n. 10; *see also Pearson v. Miller*, 211 F.3d 57, 66 (3rd Cir.2000)(when evidence in dispute is relevant to both state and federal claims, admissibility is determined under federal privilege law).

Many courts apply an exception to the attorney client privilege where the attorney and client become adversaries in a subsequent controversy or lawsuit. However, such exceptions are usually limited to cases where the client has sued the attorney or where the attorney must reveal the privileged communication in order to establish or collect a fee. *See, e.g., Go-*

*mez v. Vernon,* 255 F.3d 1118, 1131 (9th Cir.2001)("the privilege may be waived by the client either implicitly, by placing privileged matters in controversy, or explicitly, by turning over privileged documents."); *U.S. v. Ballard,* 779 F.2d 287, 292 (5th Cir.1986)(where client waived privilege by suing attorney for malpractice). Few federal courts, however, have considered whether privileged information may be used by a former in-house counsel in a wrongful termination or similar suit. The Fifth Circuit discussed this issue in *Willy: See* 423 F.3d 483. There, the plaintiff was a former in-house counsel who brought suit against his former employer after he was terminated, which plaintiff alleged was in retaliation for his whistleblowing activities. *Id.* Plaintiff sought to compel production of and introduce certain documents that were undisputably subject to the attorney-client privilege or the attorney work-product doctrine. *Id.* The Fifth Circuit allowed the plaintiff to use the privileged information in pursuing his claim. *Id.* Plaintiff argues that *Willy* stands for the proposition that "the attorney-client privilege is not a bar to Plaintiffs' Sarbanes–Oxley whistleblower claims." (Doc. # 177 at 22). While, as discussed below, we ultimately conclude that the attorney-client privilege is *not* a bar to Plaintiffs' claims, we think Plaintiffs' reading is overly broad, given language in *Willy* that expressly limits the holding to the context of whistleblower claims before an ALJ, emphasizing that "what is *not* before us is a suit involving a jury and public proceedings ...", *Willy,* 423 F.3d at 500–01. The present case, though sealed, will involve the presentation of evidence to a jury, should it reach trial, which makes it significantly different from the setting in *Willy,* where the plaintiff sought to present evidence to the ALJ only. Thus, we must look elsewhere for guidance as to whether Plaintiffs may use privileged information in pursuing their claim. The Ninth Circuit has not considered this specific issue. The Third Circuit, however, considered the issue in the context of a suit by a former in-house counsel for retaliatory discharge and sex discrimination under Title VII. *Kachmar v. SunGard Data Systems, Inc.,* 109 F.3d 173 (3rd Cir.1997). There, the court adopted the rationale advanced by the California Supreme Court in *General Dynamics v. Superior Court,* 7 Cal.4th 1164, 32 Cal. Rptr.2d 1, 876 P.2d 487 (1994), holding that concerns regarding disclosure of client confidences in suits by in-house counsel did not alone warrant dismissing a plaintiff's case, especially where there are other means to prevent unwarranted disclosure of confidential information. *Kachmar,* 109 F.3d at 181. We agree. Further, as the *General Dynamics* court noted, "trial courts have at their disposal several measures to minimize or eliminate the potential untoward effects on both the attorney-client privilege and the interests of the client-employer resulting from the litigation of such wrongful termination claims by in-house counsel." *General Dynamics,* 7 Cal.4th at 1170, 32 Cal.Rptr.2d 1, 876 P.2d 487.

We decline, however, to adopt *General Dynamics's* harsh holding that "in those instances where the attorney-employee's retaliatory discharge claim is incapable of complete resolution without breaching the attorney-client privilege, the suit may not proceed." *General Dynamics,* 7 Cal.4th at 1170, 32 Cal.Rptr.2d 1, 876 P.2d 487. We think such a holding would thwart the clear public policy advanced by the provisions of SOX, under which Plaintiffs bring their claims. The 1994 *General Dynamics* court may not have foreseen the corporate scandals and subsequent legislation, like SOX, which has materially changed the

landscape for in-house attorney whistle-blowers. Further, the General Dynamics court explicitly noted that their decision was made with consideration to the California Rules of Professional Conduct, not the Model Rules. *General Dynamics,* 7 Cal.4th at 1190 n. 6, 32 Cal.Rptr.2d 1, 876 P.2d 487. We think the California rule and relevant code sections overly restrictive; the rule in California requires an attorney to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." California Bus. and prof Code 6068(e)(1). By contrast, the approach allowed by the Model Rules, and adopted in Nevada, is more in line with promoting the important public policy advanced by SOX, while still protecting the client. The Model Rules permit a lawyer to reveal confidential information relating to the representation in order "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client." ABA Model Rule 1.6(b)(5); *see also* Nevada Rule 1.6 (identical language). Multiple courts have found offensive use of privileged information appropriate under such rules. *See, e.g., Burkhart v. Semitool, Inc.,* 300 Mont. 480, 5 P.3d 1031 (2000).

## D. Plaintiffs' SOX Claims

In order to prevail on their SOX claim Plaintiffs must show by a preponderance of the evidence that (1) they engaged in protected activity; (2) the employer knew of the protected activity; (3) they suffered an unfavorable personnel action; and (4) circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action. *Collins v. Beazer Homes USA, Inc.,* 334 F.Supp.2d 1365, 1375 (N.D.Ga.2004).

### (1) Protected Activity

The provisions of SOX protect an employee who provides information that the employee "reasonably believes constitutes a violation" of any SEC rule or regulation or any provision of federal law relating to fraud against shareholders. 18 U.S.C. 1514(A)(a)(1); *Collins,* 334 F.Supp.2d. at 1376. Although the plaintiff "need not show an actual violation of law, general inquiries do not constitute protected activity." *Fraser v. Fiduciary Trust Co. Int.,* 417 F.Supp.2d 310, 322 (S.D.N.Y. 2006). "Protected activity must implicate the substantive law protected in Sarbanes–Oxley 'definitively and specifically.'" *Bozeman v. Per–Se Tech., Inc.,* 456 F.Supp.2d 1282, 1359 (N.D.Ga.2006).

Defendants, relying on *Bozeman* and some unpublished cases, argue that Plaintiffs complaints must have had a certain degree of specificity in order to qualify as protected activities and that Plaintiffs' request for an investigation lack such specificity. (Doc. # 173, at 12. Plaintiffs argue that their activities were sufficiently specific under the relevant law.) (Doc. # 177 at 30). First, the language following the sentence containing the "definitively and specifically" language states that "It is sufficient that 'the individuals to whom the complaints were addressed understood the serious nature of [the employee's] allegations.'" *Bozeman,* 456 F.Supp.2d at 1359. One reading of this language might interpret this, in light of the "implicate .... definitely and specifically" language, to require only that a plaintiff *imply* or suggest a violation of SOX, so long as the person "to whom the complaint is made understood the serious nature of [the employee's] allegations." However, a closer look reveals this as an untenable position. The "definitively and specifically" language in *Bozeman* comes from a case regarding whistleblowing in the Energy Reorganization Act context, *American Nuclear Resources, Inc. v. U.S. Dept. Of Labor,* 134 F.3d 1292, 1295 (6th Cir.1998). In *Ameri-*

*can Nuclear* the Sixth Circuit indicated that "an employee's act must *implicate* safety definitively and specifically" in order to make a protected safety report. *Id.* at 1295 (emphasis added). Thus, in the analogous SOX context, an employee's act must *implicate* securities fraud definitively and specifically. While the words "implicate" and "imply" have the same Latin root,[1] and while "implicate" can be a synonym for "imply" in certain contexts, here we think such a reading would render the text nonsensical; such a reading would mean that a employee would have to *imply* in a way that is *definitive and specific.* In the sentence in question the word "implicate," taken in context with the modifying adverbs "definitively and specifically," must mean "to bring into intimate or incriminating connection" *See Webster's Third New International Dictionary, Unabridged,* 1135 (entry for "implicate"). Thus, a better synonym for implicate in this context would be "incriminate" or "accuse."[2] Other language in *Bozeman* reinforces this interpretation: the whistleblower may only claim the protection of SOX where "the reported information ... [has] a degree of specificity [and] ... state[s] particular concerns, which, at the very least, reasonably identify a respondent's conduct that the complainant believes to be illegal." *Id.* (quoting *Lerbs v. Buca Di Beppo, Inc.,* 2004-SOX-8, 2004 DOLSOX

LEXIS 65, *33–34). Thus, the whistleblowing cannot be vague.[3]

*Whether Plaintiffs' engaged in protected conduct during their November meeting with Dave Johnson*

■ Here, Plaintiffs allege that both Lena and Shawn Van Asdale engaged in protected activity when they met with Dave Johnson, General Counsel at IGT, on November 24, 2003. Plaintiffs' evidence regarding this meeting indicates that (1) Shawn Van Asdale recalls Lena Van Asdale specifically describing the suspicious circumstances surrounding the appearance of the Trask–Britt documents (Doc. # 173, Exh. 1, p. 286), (2) Shawn Van Asdale told Mr. Johnson that they needed to "investigate" the "potential for fraud" (*Id.*), and (3) Shawn Van Asdale told Mr. Johnson that the Trask–Britt document may indicate fraud on the patent office (*Id.*). Defendant's position is that Plaintiffs did not convey their concerns about shareholder fraud at this meeting; they only conveyed concerns about fraud on the patent office. (Doc. # 173, Doc. # 183). We agree. Plaintiff Shawn Van Asdale was questioned extensively in his deposition regarding what comments he made to Mr. Johnson at the November meeting, including "What did you say about the potential for fraud?" (Doc. # 173, Exh. 1, p. 286); "What did you tell him?" (*Id.*); "What other statement do you individually recall

---

1. *Implicare:* to infold or involve. *See Webster's Third New International Dictionary, Unabridged,* 1135 (4th ed.1976).

2. implicate, Thesaurus.com. *Roget's New MillenniumTM Thesaurus, First Edition (v 1.3.1).* Lexico Publishing Group, LLC. *http://thesaurus.reference.com/browse/implicate* (last visited June 8, 2007)

3. Additionally, Defendants argue that where a plaintiff's alleged retaliation is based on a report to "the same supervisor he alleges was condoning and enforcing the illegal activity," the plaintiff's "wrongful termination claim

fails on this basis alone." *Rivera v. Nat'l R.R. Passenger Corp.,* 331 F.3d 1074, 1079 (9th Cir.2003). *Rivera,* although a Ninth Circuit case, applies California State law on retaliatory discharge, not federal law relating to whistleblower claims under Sarbanes–Oxley or any other similar statute that affords protection for whistleblowers. As such, its analysis relies on California law, which is inapplicable to the SOX claims in this case. Neither party has called the court's attention to any federal law imposing such a requirement, and we decline to impose one here.

saying to Mr. Johnson at this meeting?" (*Id.*); and "Anything else you recall specifically saying to Mr. Johnson in this November 23rd meeting?" (*Id.* at 287). In all cases, Plaintiff Shawn Van Asdale's answers never mentioned shareholder fraud in response to these questions. Instead, he gives context to the statements by saying that he told Mr. Johnson that they needed to "investigate these issues, *the potential for fraud,* before we could assert those patents because of inequitable conduct or fraud on the patent office ..." (*Id.* at 286, emphasis added). His deposition testimony makes clear that at the November meeting his comments to Mr. Johnson regarding "the potential for fraud" related only to his concerns regarding fraud on the patent office.

■ Plaintiff attempts to create a genuine issue of material fact by attaching to his opposition a declaration from Mr. Van Asdale in which he states (1) that he told Mr. Johnson that the situation appeared suspicious and that they needed to investigate for fraud on the shareholders. (*Id.*; Doc. # 177, Exh. E). Because this portion of this declaration contradicts Plaintiff Shaw Van Asdale's deposition testimony it must be disregarded. *See Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.,* 397 F.3d 1217, 1225 (9th Cir.2005)("Under the 'sham' affidavit rule, a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.") (citation and internal quotation marks omitted).

In order for this court to find that there is a genuine issue of material fact regarding whether Plaintiff engaged in protect conduct at the November meeting we would have to infer that Mr. Van Asdale *implied* that shareholder fraud had occurred and that Mr. Johnson understood the implication. Given Mr. Van Asdale's deposition testimony, this is just too much of a stretch, and does not constitute protected activity under the case law, pursuant to our above discussion.[4]

*Whether Shawn Van Asdale engaged in other protected activity*

Plaintiff Shawn Van Asdale also alleges that the following events also qualify as protected activities: (1) his discussions with Sarah Beth Brown, IGT's then general counsel, (2) his discussions with Mr. Pennington, IGT's Executive Vice President of Strategic Development, (3) his email to Mr. Johnson requesting advice on how to present some information regarding the Wheel patents to the Board. (Doc. # 173).

*Mr. Van Asdale's meetings with Ms. Brown and Mr. Pennington*

■ Plaintiffs' evidence regarding these meetings with Ms. Brown and Mr. Pennington includes evidence (1) that Mr. Van Asdale told Ms. Brown that Mssrs. Matthews and Hettinger, the IGT CEO and Executive Director of Corporate Strategy, respectively, knew more than they were saying and that "it might go to the top" (Doc. # 177, Exh. B, p. 37), (2) that Ms. Brown considered an investiga-

---

**4.** Plaintiff's declaration also states that "We told Mr. Johnson that the intentional non-disclosure of the Trask–Britt documents bore implications of fraud" and "Mr. Johnson seemed to understand the implications of what we were saying." (Doc. # 177, Exh. E). Both of these statements use the word "implications" in the sense of something implied, not in the sense permitted under the case law. Further, although the second statement could be admissible since it does not contradict Shawn Van Asdale deposition testimony, the first statement contradicts the deposition testimony and so cannot create a genuine issue of material fact. The second statement also fails to raise a genuine issue of material fact since whether Mr. Johnson understood what Plaintiffs alleged only matters if they did something more than imply fraud.

tion "to determine if there was a deliberate withholding of information prior to the merger" (*Id.* at p. 42), (3) that Mr. Van Asdale discussed with Mr. Pennington whether Mr. Pennington wanted Mr. Van Asdale to investigate why the Trask Britt documents were not provided to IGT pre-merger (Doc. # 177, Exh. C, p. 241), (4) that Mr. Van Asdale asked Mr. Pennington if Mr. Pennington believed that Mr. Matthews knew about the flyer (contained in the Trask–Britt docs) and intentionally concealed it and that Mr. Pennington stated that he *did* think Mr. Matthews had such knowledge and had intentionally concealed the document (Doc. # 177, Exh. C, p. 127).

First, with regard to Mr. Van Asdale's comments to Ms. Brown, a reasonable jury could find that these qualified as reports of fraud and thus satisfy the protected conduct prong. Second, although it is a close case, a reasonable jury could find that Mr. Van Asdale's discussion with Mr. Pennington qualified as protected conduct as well. Although the court thinks a reasonable jury could also find that Mr. Van Asdale was not so much reporting fraud as he was asking if Mr. Pennington wanted him to look into it further, if a jury believed Mr. Van Asdale that the purpose of this conversation was to report fraud and that Mr. Pennington understood it as such then this conduct would qualify as protected. To that same end, a reasonable jury could find that Mr. Van Asdale's inquiry regarding Mr. Pennington's beliefs about whether the flyer was intentionally withheld were made—given the context—for the purpose of reporting Mr. Van Asdale's suspicions of fraud.

*Mr. Van Asdale's email to Dave Johnson*

Plaintiffs' evidence regarding the email to Mr. Johnson includes (1) a portion of Mr. Johnson's deposition testimony in which he reads into the record an email from Shawn to Mr. Johnson from Shawn's blackberry, and (2) Mr. Johnson's admission in the deposition that he knows what "CIP miscue" means. (Doc. # 177, Exh. A, p. 21).[5] However, Mr. Johnson's testimony regarding this email and the "CIP miscue" makes clear that he understood all of this to concern fraud on the patent office, not fraud on the shareholders. (*Id.* at Exh. A, p. 17–23).

The evidence presented here indicates that Lena and Shawn Van Asdale both reported to Dave Johnson the suspiciousness of the Trask–Britt documents and the potential fraud those documents revealed. (Doc. # 173, Exh. 2, p. 286). However, the potential for fraud reported was the potential for fraud on the patent office, not fraud on the shareholders. Nevertheless, as discussed above, the evidence of Shawn Van Asdale's communications with Ms. Brown and Mr. Pennington, could lead a reasonable jury to conclude that Mr. Van Asdale engaged in protected activity on these occasions, which satisfies this part of the first prong of Plaintiff's prima facie case.

*Whether Plaintiffs had a subjective belief that was objectively reasonable*

▮▮▮ The relevant section of SOX provides that the whistleblower must "reasonably believe" that there has been a SOX violation. 18 U.S.C 1514(A)(a)(1); *Collins,* 334 F.Supp.2d. at 1376. The court's review of the relevant published authorities reveals that "[t]he [reasonableness] threshold is intended to include all good faith and reasonable reporting of fraud, and there should be no presumption that reporting is otherwise, absent specific evidence." *Collins* at 1376 (citing to Sarbanes–Oxley legislative history).

5. "CIP" apparently mean "continuation in part." (Doc. # 177, Exh. A, p. 21).

The legislative history makes clear that the "reasonable person" standard should be applied. *See* Legislative History of Title VIII of HR 2673: The Sarbanes Oxley Act of 2002, Cong. Rec. S7418, S7420 (daily ed. July 26, 2002), *available at* 2002 WL 32054527. In order for an employee to reasonably believe that a violation occurred, they must have a subjective and objectively reasonable belief that fraud occurred. *See, e.g., Kalkunte v. DVI Financial Services,* 2004–SOX–00056, 2005 WL 2063788 (2005)(where ALJ determined that complainant, an attorney, had a reasonable belief that the alleged conduct constituted a covered violation). Under the subjective portion of the reasonableness requirement the employee must *actually* believe that the employer was in violation of the relevant law or regulations and under the objective portion of the reasonableness requirement the employee's belief must be objectively reasonable. *See, e.g., Grant v. Dominion East Ohio Gas,* 2004–SOX–63 (ALJ Mar. 10, 2005). Reasonableness is "determined on the basis of the knowledge available to a reasonable person in the circumstances with the employee's training and experience." *Id.*

### Subjective belief

The court's analysis of the meeting with Mr. Johnson compels the conclusion that Lena Van Asdale did not engage in protected activity. However, even if her conduct in this meeting could be construed as protected activity her claim would still fail, because she testified that she had not reached a conclusion one way or another regarding whether fraud had been perpetrated on IGT's shareholders, and that the reason she was unsure was because she had not been permitted to do an investigation. (Doc. # 182). Plaintiffs do not present any conflicting evidence that would create a genuine issue of material fact regarding whether Lena Van Asdale had a subjective belief that fraud had occurred. No reasonable jury could find, given the evidence currently before the court, that Ms. Van Asdale had a belief that fraud occurred. Her explicit testimony is that she had no belief one way or another.

Defendant does not contest that Shawn Van Asdale had a subjective belief that fraud had occurred.

### Objectively reasonable belief

Defendant argues that because non-disclosure of the Trask–Britt documents would only indicate fraud if such disclosure was intentional, Shawn (and Lena), even if they both had a subjective belief that fraud had occurred, could not, as a matter of law, have an objectively reasonable belief unless they ruled out other non-fraudulent explanations for the non-disclosure. (Doc. # 173). This argument asks too much. Were the court to adopt such a rule, then an attorney whistleblower would be required to investigate and rule out other possible explanations for what appears to be fraud *before* ever reporting the apparent fraud to any one at the company. The statute does not require this and no case law imposing such a requirement has been mentioned in Defendant's brief or called to the court's attention in another way. Thus, there remains a genuine issue of material fact regarding whether Shawn Van Asdale's belief that fraud had occurred was objectively reasonable.

### (2) Employer Knew of the Protected Activity

█ The second prong in the *Collins* analysis requires Plaintiffs to show by a preponderance of the evidence that the employer knew of the protected activity. *Collins,* 334 F.Supp.2d at 1375. In order to satisfy this prong the employee must show that he or she provided the information to some person at the company with

supervisory authority over the employee. *Id.* at 1378.

The court does not agree that only complaints to those who actually made the termination decision can satisfy this prong. (Doc. # 183, p. 11). The clear language of this prong does not impose such a requirement. Defendants do not dispute Plaintiff's contention that Ms. Brown and Mr. Pennington had supervisory authority over Shawn Van Asdale. (Doc. # 177, p. 13).

### (3) Plaintiff suffered an unfavorable personnel action

Defendant does not dispute that Plaintiffs meet this requirement. IGT terminated the employment of both Plaintiffs. (Docs.# 177).

### (4) Circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action.

■ To establish a prima facie SOX violation, Plaintiffs must also show that circumstances exist to suggest that the protected activity was a contributing factor to their terminations. In the absence of any direct evidence of retaliatory intent, courts looks to the timing of termination in determining whether circumstances exist to suggest that their protected activities were a contributing factor in their terminations. *Collins,* 334 F.Supp.2d at 1379.

*Shawn Van Asdale*

■ Here, Plaintiffs have not called the courts attention to any direct evidence of retaliatory intent. Although it is undisputed that Plaintiffs were not terminated until several months after the comments Shawn Van Asdale made to Mr. Pennington and many months after the comments he made to Ms. Brown, there is evidence that Mr. Johnson decided to terminate Mr. Van Asdale some time around Thanksgiv-

ing, not long after the November meeting he had with the Van Asdales. (Doc. # 177, Exh. A, p. 57). Because the November meeting with Mr. Johnson did not constitute protected activity, the proximity of this meeting to his decision to terminate either Plaintiff lacks relevance and so cannot be considered. Moreover, the evidence of complaints to IGT officials other than Mr. Johnson is only relevant under this prong if Mr. Johnson knew of and considered the protected activity in making his termination decision. Ms. Brown testified at her deposition that she did not relay Shawn Van Asdale's comments to Mr. Johnson. (Doc. # 173, Exh. 6, p. 47). Neither party has brought forth any facts regarding whether or not Mr. Pennington shared Shawn Van Asdale's comments with Mr. Johnson. Mr. Pennington's deposition is not attached as an exhibit to Defendant's motion, although counsel's declaration asserts that it is (Doc. # 173, p. 2), and the portions of the deposition testimony attached by Plaintiff do not show that Mr. Pennington told Mr. Johnson about Shawn's comments to him. (Doc. # 177, Exh. D). Plaintiffs' opposition focuses solely on the proximity in time between the November meeting with Johnson and Johnson's late November decision to fire Mr. Van Asdale (although he wasn't actually fired until later). Shawn Van Asdale has not met his burden of proof on this point. As such, his prima facie claim fails and summary judgment of his SOX claim is **GRANTED** for the Defendant.

*Lena Van Asdale*

Just as with Mr. Van Asdale, Plaintiffs have not called the court's attention to any direct evidence of retaliatory intent. Nor have Plaintiffs called the court's attention to any evidence indicating that Mr. Johnson decided to fire Ms. Van Asdale at the same time he made the decision to fire her

husband. In fact, they have not called the court's attention to any evidence contradicting Mr. Johnson's testimony that at the time of Mr. Van Asdale's termination he "had absolutely no intentions ... about anything to do with Mrs. Van Asdale." (Doc. # 61). Taking this as an undisputed fact, it compels the conclusion that the long lag between the time of Ms. Van Asdale's protected activity and the time of her termination indicates that her claimed protected activity was not a factor in her termination. The mere fact that in late November Mr. Johnson reached a conclusion regarding whether he wanted to terminate her husband's employment does not require an inference that he also decided to terminate her employment at that time. Moreover, as already stated, the evidences suggests that he did not decide to terminate her until much later. Ms. Van Asdale cannot meet her burden of proof on this element of her claim. Likewise, it is undisputed that she did not have the requisite mental intent of subjective belief that fraud occurred and that even if she had such intent her comments to Mr. Johnson do not qualify as protected activity. For these reasons, summary judgment in favor of Defendant is **GRANTED** as to Ms. Van Asdale's SOX claim.

### E. Plaintiffs' State Law Claims

 A federal court may retain jurisdiction of the pendant state claims even if the federal claims over which it had original jurisdiction are dismissed. *See Brady v. Brown,* 51 F.3d 810, 816 (9th Cir.1995). Where the court has dismissed all claims over which the court has original jurisdiction the court may decline to exercise supplemental jurisdiction. 28 U.S.C. § 1367(c)(3). "The decision to retain jurisdiction of state law claims is within the district court's discretion, weighing factors such as economy, convenience, fairness, and comity." *Id.*

Here, we think that retaining jurisdiction of the pendant state claims would not serve the economy or convenience of this court. Plaintiffs' state law claims are *DISMISSED WITHOUT PREJUDICE.*

### CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment (Doc. # 173) is **GRANTED.** Let judgment be entered accordingly.

### ORDER

Before the court is Plaintiffs' Motion for Reconsideration (Doc. # 201). Defendant opposed the motion (Doc. # 205) and Plaintiffs replied (Doc. # 209).

### BACKGROUND

The facts of this case have been set forth at length in the court's Memorandum Decision and Order granting summary judgment for Defendant. (Doc. # 197). Plaintiffs now ask the court to reconsider that motion, arguing that the court failed to construe the facts in the light most favorable to the Plaintiffs. (Doc. # 201). Plaintiffs also argue that the court erred in refusing to consider Plaintiff Shawn Van Asdale's declaration, attached to Plaintiffs' Opposition to the Motion for Summary Judgment. (Doc. # 177, Exh. E).

### DISCUSSION

#### A. Standard of Review

 Under FED.R.CIV.P. 59(e) a district court may reconsider and amend a previous order. However, this is "an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani,* 342 F.3d 934, 945 (9th Cir.2003)(internal quotations omitted). Absent "highly unusual circumstances" a motion for recon-

sideration may only be granted where one of three circumstances is present: (1) the court made manifest errors of law or fact upon which the judgment is based, (2) there is newly discovered evidence or previously unavailable evidence, or (3) there is an intervening change in the controlling law. *Id.* "A Rule 59(e) motion may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Id.*

Here, Plaintiffs move for reconsideration based on their belief that the court committed clear error. (Doc. # 201). They assert that the court erred by (1) "not viewing Plaintiffs' disclosures to Johnson in a light most favorable to Plaintiffs," and (2) "in discounting Shawn Van Asdale's Declaration in its entirety." (*Id.*).

## B. Plaintiffs' disclosures to Johnson

 Plaintiffs argue that because Mr. Johnson "was and is an extremely sophisticated recipient of the information the Van Asdales provided to him at the meeting" he must have understood that they were alleging shareholder fraud. (Doc. # 201). Although the court fully understands Plaintiffs argument that an inference *could* be drawn that he understood, the law requires that a whistleblower do more than *imply* that a SOX violation occurred. As discussed in the order (Doc. # 197), the law does not provide that a Plaintiff may merely imply a violation of SOX occurred, "so long as the person 'to whom the complaint is made understood the serious nature of [the employee's] allegations.' " *Bozeman v. Per–Se Tech., Inc.,* 456 F.Supp.2d 1282, 1359 (N.D.Ga.2006). The law requires that in order to qualify as protected activity the alleged whistleblowing "must implicate the substantive law protected in Sarbanes–Oxley 'definitively and specifically.' " *Id.* at 1359. Thus, as

set forth in the order, we interpret *Bozeman* to require that the alleged whistleblowing activity must incriminate or accuse, not merely imply. (Doc. # 197, pp. 9–11). We further find it interesting that Plaintiffs apparently disagrees with the court's interpretation of *Bozeman* and yet fail to discuss the case at all in the present motion. The court stands by its holding that under the relevant law neither Plaintiff has shown that there remains a dispute of material fact regarding whether they alleged shareholder fraud. At the very best, they implied that there had been shareholder fraud. As discussed in the order (Doc. # 197, pp. 9–11), the law requires that a plaintiff do more than imply before he or she can claim the protection of the Sarbanes–Oxley provisions for whistleblowers.

## C. Plaintiff Shawn Van Asdale's declaration

 Plaintiffs also argue that the court erred in refusing to consider Shawn Van Asdale's declaration. (Doc. # 201). In essence, they argue that the declaration does not contradict Plaintiff's previous deposition testimony. (*Id.*). We disagree. As set forth in the order, Plaintiff Shawn Van Asdale testified at his deposition that the fraud he wanted investigated concerned potential fraud on the patent office. In contrast, in his declaration he asserts that he "consistently told [his] supervisors of two possible frauds … a general fraud on IGT shareholders … [and] a specific fraud against the U.S. Patent Office …" This contradicts what Plaintiff asserted in his deposition, which was that he told Mr. Johnson about the potential for fraud on the patent office. (Doc. # 173, Exh. 2; Doc. # 177, Exh. E). Even construing the deposition in the light most favorable to Plaintiffs, at most Plaintiffs implied that there had been fraud on the shareholders. As discussed above, implying is not enough

under the relevant case law. As such, the declaration testimony asserting that it is incorrect that Plaintiffs "told Dave Johnson only about the fraud on the patent office, an the resulting potential for a finding of inequitable conduct" contradicts the deposition testimony, where Plaintiff discussed what he told Mr. Johnson about fraud on the patent office, and never brought up anything about fraud on the shareholders. The arguments Plaintiffs make in the present motion do not persuade the court that we erred in not considering the declaration.[1]

## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Reconsideration (Doc. # 201) is **DENIED.**

---

1. We note that even if we had considered the declaration, the outcome would remain the same. The declaration asserts that Mr. Johnson "seemed to understand the implications of what we were saying." (Doc. # 177, Exh. E). This does not assist Plaintiffs' case, given our analysis of *Bozeman*. (Doc. # 197, pp. 9–11). Further, Plaintiff Shawn Van Asdale asserts that he consistently told "his supervisors of two possible frauds," not that he told Mr. Johnson about two frauds. What the other supervisors knew is only relevant if they had some input in the decision to terminate Plaintiff Shawn Van Asdale. (Doc. # 197, pp. 17–18).